IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

TUONI, et al.

    Plaintiffs,

vs.                                                      No. CIV 99-1514 MV/KM

BROWN & WILLIAMSON, et al.

    Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Plaintiffs' Motion to Remand, filed May 12, 2000 **[Doc. 10]**. The Court, having considered the motion, the memorandum in support of the motion **[Doc. 11],** response **[Doc. 12],** reply **[Doc. 13]**, relevant law and being otherwise fully informed, finds that the Motion to Remand is well taken and will be **GRANTED** as explained below.

### BACKGROUND

Plaintiffs L. Francesca Tuoni, individually and as the personal representative of the Estate of Virginia B. Tuoni, and Gilda Tuoni Russell filed a complaint for wrongful death in the Second Judicial District Court of the State of New Mexico. The Defendants are Brown & Williamson Tobacco Corporation (individually and as successor by merger to The American Tobacco Company), Core-Mark Mid Continent, Inc., Gem State Distributors, Inc., General Distributors, Inc., Philip Morris Incorporated, The Liggett Group, Inc. (individually and as successor to Liggett and Myers Tobacco Company and Liggett and Myers, Inc.), Lorillard Tobacco Company, and R.J. Reynolds Tobacco Company.

1

Defendants removed the case to this Court based on 28 U.S.C. § 1332, diversity jurisdiction, and 28 U.S.C. § 1441, removal. In this case, the amount in controversy is not at issue. As to diversity of citizenship, Decedent and Plaintiffs are diverse from all Defendants save one, General Distributors, thereby defeating this Court's diversity jurisdiction. In their notice of removal, Defendants argue that while Decedent and Plaintiff Tuoni share New Mexico citizenship with General Distributors, diversity jurisdiction is not destroyed because the Plaintiffs joined General Distributors solely to defeat this Court's diversity jurisdiction. Defendants claim that Plaintiffs fail to state any cognizable claim for relief against General Distributors and, thus, have engaged in the practice of fraudulent joinder. Because of the fraudulent joinder, Defendants argue, General Distributors' citizenship must be disregarded for purposes of determining diversity jurisdiction. If this Court ignores General Distributors' citizenship, this Court would then have diversity jurisdiction, and it would then have to deny Plaintiffs' motion for remand.

Plaintiffs have filed for remand claiming that they did not fraudulently join General Distributors to defeat diversity jurisdiction. In their complaint, Plaintiffs generally allege that the cigarette distributor defendants, including General Distributors, marketed, advertised, sold and/or distributed to Decedent cigarette products, in various locations throughout the state of New Mexico, which proximately caused injury to Decedent. Compl. ¶ 15. Plaintiffs specifically allege negligence (Count II) and strict products liability (Count IV) against the distributor defendants, which includes General Distributors. Compl. ¶¶ 32 - 35, 39.

**FRAUDULENT JOINDER STANDARD OF REVIEW**

In *Dodd v. Fawcett Publications, Inc.*, 329 F.2d 82 (10th Cir. 1964), the Tenth Circuit defined fraudulent joinder. "The joinder of a resident defendant against whom no cause of action

is stated is patent sham, and though a cause of action be stated, the joinder is similarly fraudulent if in fact no cause of action exists." *Dodd,* 329 F.2d at 85 (citations omitted); *see also Roe v. General American Life Ins. Co.,* 712 F.2d 450, 452 n\* (10th Cir. 1983), *citing Dodd*, 329 F.2d 82. The *Dodd* court further explained that "[u]pon specific allegations of fraudulent joinder the Court may pierce the pleadings, consider the entire record, and determine the basis of joinder by any means available." *Dodd*, 329 F.2d at 85 (citations omitted). "This does not mean that the federal court will pre-try, as a matter of course, doubtful issues of fact to determine removability; the issue must be capable of summary determination and be proven with complete certainty." *Id.* (citations omitted).

In *Dodd,* the Tenth Circuit affirmed a district court order denying a motion to remand to state court where removal was based on fraudulent joinder. *See* 329 F.2d at 85. *Dodd* was one of thirteen cases filed in reaction to a *True* magazine article, "The Pill That Can Kill Sports," about the University of Oklahoma varsity football team *See Dodd,* 329 F.2d at 83. Thirteen football players filed separate libel per se actions concerning the article. The cases were each filed against Fawcett Publications, publisher of True Magazine, and its distributor, Mid-Continent News Company. *Id.* At the conclusion of the evidence of one of the cases, the *Morris* case, the trial court directed a verdict in favor of co-defendant Mid-Continent. *Id.* Plaintiff Morris appealed the directed verdict in favor of Mid-Continent to the Oklahoma Supreme Court. *Id.* The Supreme Court affirmed finding that Mid-Continent could not be held liable for any damages caused by the *True* article. *Id.*

Plaintiff Dodd, Oklahoma resident, then brought his near identical case against Fawcett, non-resident, and Mid-Continent News Company, resident. Fawcett removed the case from the

state court alleging that Mid-Continent had been fraudulently joined in order to destroy the federal court's diversity jurisdiction. *Id.*  In his removal action, Fawcett relied on the Oklahoma Supreme Court's holding. *Id.*  Fawcett relied on the holding and claimed that it would be impossible for Dodd to recover against Mid-Continent, and thus Dodd had fraudulently joined Mid-Continent. *Id.*  The Tenth Circuit agreed stating that "Mid-Continent's non-liability is ... established as both a matter of fact and law, and its continued joinder serves only to frustrate federal jurisdiction." *Id* at 85.

This Court has found that since *Dodd* the Tenth Circuit has had little opportunity to consider fraudulent joinder in detail.  The Court found an unpublished order and judgment in which the Circuit considered fraudulent joinder in some detail, but such orders and judgments are not binding precedent.  See 10th Cir. R. 36.3*; see also Montano v. Allstate Indemnity,* 211 F.3d 1278 (10th Cir. 2000) (Westlaw Table Text).  It is clear from the parties' memoranda in support of their positions that they too have found little Tenth Circuit fraudulent joinder case law beyond *Dodd.*  When setting out the fraudulent joinder standard of review in their memoranda, Plaintiffs cite the Court only to Fifth Circuit case law and Defendants cite the Court only to *Dodd* and *Roe*, a case which cites back to *Dodd.  See supra.*

*Dodd* is helpful in setting out a general rule on fraudulent joinder, namely "if no cause of action exists" there is fraudulent joinder.  *See* 329 F.2d at 85.  In *Dodd,* no cause of action meant that under the law of Oklahoma, the Plaintiff could not establish liability against Mid-Continent. *See* 329 F.2d at 85;  see also James F. Archibald III, <u>Reintroducing "Fraud" to the Doctrine of Fraudulent Joinder</u>, 78 Va. L. Rev. 1377, 1389-1390 (1992).  The Court also learns from *Dodd* that "piercing the pleadings" means that this Court can look beyond the pleadings to determine if

4

a cause of action exists against a non-diverse Plaintiff.  *Id.*  In *Dodd,* piercing the pleadings meant looking to an earlier decision from the state's highest court.  *Dodd,* 329 F.2d at 85.

While *Dodd* is helpful in setting out the basic fraudulent joinder standard and providing an example of a case where there is no cause of action, it does not provide this Court guidance in the instant case for determining whether "no cause of action" exists.  In this case, there has been no decision from New Mexico's highest court establishing the non-liability of General Distributors.  The Court will thus look to the parties' representation of the fraudulent joinder standard for guidance.  The Defendants interpret *Dodd* to say that "[f]raudulent joinder occurs when the plaintiff has not stated a plausible cause of action against any non-diverse defendant."  Memo. in Opp. at 3.  The Court does not read the *Dodd* rule as such.  In *Dodd,* the Plaintiff had no possibility of recovery against the non-diverse defendant under Oklahoma law as determined by the highest court in Oklahoma.  *Dodd*, thus presented a different standard than no plausible cause of action.  The Court also finds that plausible is open to a wide variety of interpretations, none of which are defined by Tenth Circuit caselaw.

The Plaintiffs cite to the Fifth Circuit for guidance on the fraudulent joinder standard of review.  The Fifth Circuit explains that to prove fraudulent joinder the removing party must prove that (1) there has been outright fraud in the Plaintiffs' recitation of the jurisdictional facts, or (2) there is absolutely no possibility that the Plaintiffs would be able to establish a cause of action against the non-diverse Defendant in state court."  *Burden v. General Dynamics Corp*., 60 F.3d 213, 217 (5th Cir. 1995).  "In evaluating fraudulent joinder claims, [the Court] must initially resolve all disputed questions of fact and all ambiguities in the controlling state law in favor of the non-removing party."  *Dodson v. Spiliada Maritime Corp.,*  951 F.2d 40, 42 (5th Cir. 1992)

5

(citations omitted); *see also Burden*, 60 F.3d at 217.   In this case, Defendants do not allege that Plaintiffs fraudulently pled jurisdictional facts.  The sole question then for the Court is whether there is "absolutely no possibility that the Plaintiffs will be able to establish a cause of action" against General Distributors."  *See Burden,* 60 F.3d at 217.

*Burden* provides more guidance on determining the possibility of establishing a cause of action in the instant case than *Dodd*.  Like this case, an action in tort, *Burden* involved a cause of action in tort, specifically the intentional infliction of emotional distress.  *Id.*  The Fifth Circuit first reviewed the elements of intentional infliction of emotional distress under Texas law.  *Id.* at 218.  Then, after taking all of the Plaintiff's allegations as true, the Fifth Circuit reviewed whether the Plaintiff could establish the tort.  *Id.*   The *Burden* court determined that the Plaintiff failed to meet one of the elements of the tort and thus upheld the District Court's order denying the motion to remand.  *Id.*

The Court will follow the analytical steps set out in *Burden.*   The Court first will review the elements of the tort the Plaintiffs have alleged, strict products liability,[1] under New Mexico law.  Then it will review, taking all of the allegations of the Plaintiffs as true, whether the Plaintiffs have the possibility of establishing a cause of action in that tort.  Finally, the Court will review the Defendants asserted reasons why, as a matter of law, Plaintiffs cannot establish a cause of action in strict products liability against General Distributors.

### New Mexico Strict Products Liability

The Court first reviews New Mexico law of strict products liability.  New Mexico has adopted the principle of strict products liability based on the Restatement (Second) of Torts

---

[1]The Court will not review the Plaintiffs other cause of action, negligence, because it finds that Plaintiffs can establish a cause of action in strict products liability.

6

§ 402A (1965). *Stang v. Hertz Corp.*, 83 N.M. 730, 732, 497 P.2d 732, 734 (1972). As set out in Stang, § 402A provides:

> (1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if (a) the seller is engaged in the business of selling such a product, and (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
> (2) The rule stated in Subsection (1) applies although (a) the seller has exercised all possible care in the preparation and sale of his product, and (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller."
> *Id.* at 732, 497 P.2d at 734.

### Application of the Elements to Plaintiffs' Claim

Applying the elements of strict products liability to Plaintiffs's claim against General Distributors, the Court finds that Plaintiffs have met element (1) and each of its subparts (a) and (b). Element (1) requires that the product be unreasonably dangerous to the ultimate consumer. Plaintiffs have pled that cigarette products were defective and unreasonably dangerous to foreseeable users because, when used as intended, they caused or contributed to the following illnesses:

> [1] bronchogenic carcinoma or lung cancer of all cell types;
> [2] chronic obstructive pulmonary disease of all types, including emphysema, chronic bronchitis, and reversible airway obstruction;
> [3] cardiovascular disease including atherosclerosis and its consequences, including myocardial infarction (heart attack), cerebrovascular accident (stroke), peripheral vascular disease, aneurysm, and other conditions;
> [4] cancers of the kidney, bladder, brain, larynx, esophagus and other organs;
> [5] genetic damage to cells of the airways, lungs, and other organs;
> [6] impairment of lung function; and
> [7] other types of injuries.
> Compl. ¶ 39.

Taking the allegations of the Plaintiffs as true, then Plaintiffs have met this first element.

As to the subparts of element (1), the Court finds that General Distributors is (a) a seller engaged in the business of distributing cigarette products in New Mexico, see Aff. Mary Vesely, Chief Financial Officer of General Distributors, Inc., ¶¶ 3, 4, and (b) the cigarettes which General Distributors distributes reach the consumer without substantial change in the condition in which they are sold. Id. ¶ 5. Clearly, having fulfilled the elements, it is possible for the Plaintiffs to establish a cause of action against General Distributors under strict products liability.

The Court finds that under New Mexico law, distributors, even though they play no role in manufacturing, can be held strictly liable. *See Parker v. St. Vincent Hospital,* 122 N.M. 39, 41 (Ct. App. 1996) citing *Stang,* 83 N.M. 730, 497 P.2d 732 and Restatement (Third) of Torts: Products Liability § 1 (Tentative Draft No. 2, 1995) ("any entity engaged in the business of selling or otherwise distributing products is strictly liable for distributing a defective product"). Thus, taking Plaintiffs' allegation that cigarettes are in a defective condition as true, General Distributors can be held strictly liable because it is a distributor.

**Defendants' Responses**

The Court now entertains the Defendants' five asserted reasons why, as a matter of law, Plaintiffs cannot recover against General Distributors. Those reasons are (1) by 1994, the risks of smoking had long been a matter of common knowledge to the public, thus barring Plaintiffs' claims; (2) there is no causal connection between General Distributors and Decedent's injuries; (3) General Distributors did not distribute any cigarettes anywhere until 1994, more than twenty-five years after the effective date of the Federal Cigarette Labeling and Advertising Act; (4) since the Decedent was allegedly "addicted" long before 1994, General Distributors could not have played any role in her "addiction"; (5) General Distributors never made *any* representations to the

Decedent regarding the health effects of cigarettes. Memo. in Opp. at 2 (listing reasons in different order).

### *Common Knowledge Defense*

Defendants argue that to be defective and unreasonably dangerous a product "must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the *ordinary knowledge common* to the community as to its characteristics." Restatement (Second) of Torts § 402A, cmt. i (1965) (emphasis added). The Defendants argue that the dangerous effects of smoking are so commonly known that it creates a complete defense as to any strict products liability claim. The Court refers to this as the common knowledge defense.

The Defendants support their assertion that the dangerous effects of smoking are common knowledge by submitting eleven exhibits which collectively attest to the dangers and addictive nature of smoking. The exhibits range from King James I's "A Counterblaste to Tobacco" (1604), as quoted in Lander's *The Tobacco Problem* (1886) to a *Reader's Digest* article, "Why Dick Can't Stop Smoking" (1980).

Plaintiffs respond that there is no common knowledge about the risks of smoking and that the question of common knowledge is a question of fact for the jury and not a question of law. Plaintiffs submit "Degree of Public Concern," a collection of different polls determining the public's knowledge about the effects of smoking. Plaintiffs point out that one poll, a 1958 Gallup Poll, found that 33% of smokers thought that cigarette smoke was "one of the causes of cancer." This means that 67% of smokers did not think that cigarette smoke was one of the causes of cancer. Plaintiffs also respond that any public knowledge that has existed about smoking related

illnesses has been incomplete and inadequate therefore precluding common knowledge. Plaintiffs cite to deposition expert testimony from *Karbiwynk v. R.J. Reynolds.* Florida 4th Judicial Circuit, 95-04697-CA.[2] The public health expert, Dr. Elizabeth Whelan, testifies that the public has received mixed messages about the effects of smoking, and that in short the public has never been fully informed about the specific effects of smoking. More pointedly, she testifies that "[t]he cigarette was far more dangerous than the knowledge to the general community." Plaintiff's Motion to Remand at 22 citing Whelan Dep. p. 130, ¶¶ 8 - 10.

As to the question of whether common knowledge is a question of fact or law, the Court considers it a question of law that is determined by the facts. *See Brune v. Brown Forman Corp.,* 758 S.W.2d 827, 830 (Tx. Ct. App. 1988) ("...common knowledge encompasses those facts which are so patently obvious and so well known to the community generally, that there can be no question or dispute concerning their existence."). For purposes of determining fraudulent joinder, the Court must resolve all disputed questions of fact and law in favor of the Plaintiff. *See Dodson,* 951 F.2d at 42. The Court finds that it has never been determined in New Mexico whether, as a matter of law, common knowledge about the dangerous effects of smoking exists. Thus, in this case where facts have been presented on both sides of the issue, the Court must find that common knowledge about the effects of smoking does not exist on "facts which are so patently obvious" that there can be no question concerning its existence. *See Brune,* 758 S.W.2d at 830. Thus, for purposes of determining whether fraudulent joinder exists, the Court finds that

---

[2]Defendants request that Dr. Whelan's statements be stricken because her opinions do not meet the requirements of Fed. R. Evid. 702. Opp. Memo. at 17 n. 12. The Court declines to entertain this request, because this is a fraudulent joinder claim and the parties are still at the stage of removal. The Court is not pre-trying this matter and such a request delves more deeply into the issues than is required for this motion. *See Dodd,* 329 F.2d at 85.

10

the common knowledge defense does not exist so as to completely bar the possibility that Plaintiffs can establish a strict products liability claim against General Distributors.

Defendants offer two more arguments supporting their common knowledge defense which the Court will address and dismiss. First, Defendants argue that as a matter of law, the United States Supreme Court has determined that the health risks of smoking are commonly known. Opp. Memo. at 16 (citing *FDA v. Brown & Williamson Tobacco Corp.,* 529 U.S. 120 (2000)). This argument is not well taken. Whether common knowledge of smoking exists at law was not an issue in *Brown & Williamson*; the central issue was whether Congress had granted the Food and Drug Administration the power to regulate the tobacco industry. *Id.* at 126. The Supreme Court simply stated that the effects of smoking are "well-known," not that as a matter of law the effects of smoking are common knowledge so as to preclude a strict products liability claim against a cigarette distributor. *See Id.* at 138.

Second, Defendants argue that comment "i," the source of the common knowledge defense, is a clear bar because the comment includes the following language: "Good tobacco is not unreasonably dangerous merely because the effects of smoking may be harmful..." Restatement (Second) of Torts § 402A cmt. i (1965). The Court dismisses this argument because these are merely illustrative notes. Even if they were more than merely illustrative, the bare language of the comment states that smoking *may* be harmful which contradicts the Defendants' assertion that everyone knows smoking *is* harmful. Thus, the Court finds that for purposes of determining fraudulent joinder, the Defendants do not enjoy the common knowledge defense.

*Causal Connection (Chain of Distribution) and Proximate Cause*

Defendants argue that the Plaintiffs cannot establish that there is a causal connection

11

between General Distributors distribution and the Decedent's injuries.  By this, Defendants mean that General Distributors cannot be found to be within the chain of distribution of the product from the manufacturer to the ultimate consumer.  For support Defendants cite to *Arenivas v. Continental Oil Co.*, 102 N.M. 106, 108, 692 P.2d 31, 33 (Ct. App. 1983), and *Ortiz v. Gas Co. of New Mexico*, 97 N.M. 81, 83 636 P.2d 900, 902 (Ct. App. 1981).  These cases do not resolve the issue of whether General Distributors is within the chain of distribution.

In *Arenivas,* the defective product was a pumping unit and the Defendant was an oil company.  102 N.M. 106, 692 P.2d 31.  "There [was] no evidence that defendant [oil company] sold, leased, or in any way placed pumping units into the stream of commerce."  *Id.* at 108, 33.  In *Ortiz* the defective product was a faulty furnace and the Defendant was the utility gas company.  97 N.M. at 83, 636 P.2d At 902.  There was no evidence that the gas company manufactured, sold, or controlled use of the furnace.  *Id.*  In short, in neither of these cases was the Defendant found to be in the chain of distribution of the defective product.

Unlike the above cases, General Distributors is clearly a distributor of cigarettes to stores in New Mexico.  General Distributors has been distributing cigarettes in New Mexico since April 1994.  See Vesely Aff. ¶ 4.  Because General Distributors is undoubtedly a distributor which placed cigarette products in the stream of commerce, the cases relied upon by Defendants do not advance their argument.

Defendants also argue that because Plaintiffs have not identified the General Distributors-supplied-stores from which the Decedent purchased cigarettes, there is no causal connection between General Distributors and the Decedent's injuries.  Thus, suggest Defendants, Plaintiffs cannot establish that General Distributors directly contributed to Decedent's injuries.

12

The Court recognizes that the parties are at the stage of removal and that with further discovery, Plaintiffs may be able to identify those stores supplied by General Distributors. Again, the Court is obliged to resolve all factual ambiguities in favor of the Plaintiffs. *See Dodson,* 951 F.2d at 42. The Court finds that Plaintiffs have the possibility of establishing the causal connection between General Distributors and Decedent's injuries, and thus the Plaintiffs have the possibility of establishing a cause of action in strict products liability against General Distributors.

*Preemption*

Defendants argue that Plaintiffs' claims against General Distributors that it failed to warn users about the dangers of smoking are preempted by the Labeling Act, 15 U.S.C. § 1333. Indeed, the Plaintiffs have based their strict products liability claim on more than a failure to warn basis. In addition to the failure to warn, Plaintiffs have based and need only base their strict products liability claim on General Distributors' distribution of an unreasonably dangerous product. Compl. ¶ 39(a) (supra). Because Defendants only allege that failure to warn claims are preempted against General Distributors and not unreasonably dangerous product claims,[3] the Court need not determine whether Plaintiffs' claim is preempted.

*No Role in Creating Addiction*

Plaintiffs generally allege that cigarettes "induce a state of addiction" and that the addiction increases from "beginning use at an early age in life." Compl. ¶¶ 20, 21. Defendants

---

[3]Defendants state: "The basis of plaintiffs' claims against General Distributors is that General Distributors failed to warn the decedent of potential harmful effects related to smoking. Since General Distributors did not distribute any cigarettes until 1994, long after the effective date of the Labeling Act, all of plaintiffs' claims are preempted." Memo. in Opp. at 7. While Defendants state that "all of plaintiffs' claims are preempted," the Court does not read Defendants' statement to mean that non-failure to warn claims are preempted.

13

respond to this by asserting that General Distributors "did not distribute cigarettes to *any* stores until 1994, when plaintiff was 79 years old and had long been a smoker." Opp. Memo., p. 4 (emphasis in original). Thus, argue Defendants, General Distributors played no role in Decedent's addiction. *Id.* at p. 5. The Court finds that Plaintiffs' general allegation of addiction is not part of their strict products liability claim and thus has no bearing on whether or not they can possibly establish such a claim against General Distributors.

*General Distributors Made No Representation Regarding the Health Effects of Cigarettes*

Defendants state that "General Distributors never made *any* representations to the decedent regarding the health effects of cigarettes." Opp. Memo. at 2 (emphasis in original). Defendants raise this argument as a defense to Plaintiffs' reliance on *Davis v. Santa Fe Natural Tobacco Company,* No. D-0101-CV-99001714 (unpublished order) (Dec. 12, 1999). Plaintiffs suggest that this Court should follow *Davis* because that case involves nearly identical issues to this one. The Plaintiffs' reliance on *Davis* is misplaced. In *Davis,* the court found there was no fraudulent joinder of the non-diverse defendant manufacturer because the Plaintiff had established a fraudulent misrepresentation claim, a cause of action which has not been pled by the Plaintiffs in the case at bar. *Davis* at 7. Thus, *Davis* which turns on the establishment of a cause of action which has not been pled by Plaintiffs in this case cannot resolve whether this case should be remanded to the state court. Nonetheless, Plaintiffs' reliance on *Davis* does not affect their strict products liability claim. Thus, the Court dismisses the Defendants' argument that General Distributors' lack of representation regarding the health effects of cigarettes would bar the possibility that Plaintiffs can establish a strict products liability claim against the distributor.

14

## CONCLUSION

The Court finds that under New Mexico law, Plaintiffs can establish a cause of action against General Distributors. Therefore General Distributors is not fraudulently joined and its citizenship will be considered in determining this Court's jurisdiction. Thus, because this Court does not have diversity jurisdiction over this matter, the Court must grant Plaintiffs' Motion to Remand.

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion to Remand, filed May 12, 2000 **[Doc. No. 10]** is **HEREBY GRANTED.** The Clerk of the Court is **DIRECTED** to take all steps necessary to effectuate remand of this action to the Second Judicial District Court of the State of New Mexico.

**IT IS FURTHER ORDERED** that the Motion To Dismiss, filed by Defendants General Distributors, Inc., Core-Mark Mid Continent, Inc., and Gem State Distributors, Inc. on June 5, 2000, **[DOCs. 14, 15, 16, 17]** as well as associated pleadings **[DOCs. 18, 19, 20,21]** are left for resolution by the state court after remand.

_____
MARTHA VÁZQUEZ
UNITED STATES DISTRICT JUDGE

Attorneys for Plaintiffs
Norwood Wilner
Turner W. Branch
Robert Lohbeck

Attorneys for Defendants
Charles A. Pharris,
Eric R. Burris
Steven R. Selsberg
Brian P. Casey
*Defendant Philip Morris Inc.*
 *and Lorillard Tobacco Company*

15

Andrew Schultz
*Defendant Brown & Williamson Tobacco Corp.*
 *(individually and as successor by*
 *merger to The American Tobacco Company*
 *and R.J. Reynolds Tobacco Company)*

Sydney B. McDole
Catherine L. Bjorck
*Defendant R.J. Reynolds Tobacco Company*

James O. Browning
Robert E. Hanson
*Defendants Core-Mark Mid Continent, Inc.*
 *and Gem State Distributors, Inc.*

Tila F. Hoffman
James W. Bartlett, Jr.
*Defendant The Liggett Group, Inc.;*
 *Liggett and Myers Tobacco Company;*
 *and Liggett and Myers, Inc.*

W. Bruce Wold
Shelly L. Brittman
Ralph A. Campillo
*Defendant Brown & Williamson*
 *Tobacco Corporation*